No. ----------
First District Appeal.

PEOPLES BANK AND TRUST CO. v.
GILBERT RACCA.
Eugene Houssiere and Latreille Estate, Intervenors.

(December 30, 1924. Opinion and Decree.)
(May 5, 1925, Opinion on Rehearing)

(*Syllabus by the Editor.*)

1. Louisiana Digest, Pledges—Par. 17, 33. Where, in a contract of pledge of a rice crop made to secure promissory notes for payment of money advanced by a bank to plant, cultivate and harvest the rice crop, it is stipulated that the "entire crop out of his share raised by him on the above described land" is pledged and where it was understood that 1/5 had been dedicated to water rent and 2/5 to land notes under the terms of the contract; held, that the bank, holder of the notes, has a pledge only on the remaining 2/5 of the crop and cannot seize the 2/5 which is to be applied to the land notes.

Appeal from the Parish of Vermilion, Hon. W. W. Bailey, Judge.

This is a sequestration suit by a bank, the holder of promissory notes secured by a pledge. The owner of part of the rice seized intervened. There was judgment for intervenors, and plaintiff appealed.

Judgment affirmed.

Nugier & Gordy, of Abbeville, attorneys for plaintiff, appellant.

Broussard & Samson, of Abbeville, attorneys for defendant, appellee.

MOUTON, J. Plaintiff bank brought suit against defendant on several promissory notes, alleging that these obligations represented cash advances made to defendant to plant, cultivate and harvest a rice crop in the year 1923 on his farm, situated in Vermilion Parish.

Averring that it feared defendant would conceal or dispose of his rice crop, the Bank obtained the issuance of a writ of sequestration, under which 279 sacks of rice were seized by the sheriff.

Eugene Houssiere and the Latreille Estate intervened in the case, claiming they had acquired the rice from defendant in September and October, 1923; that they were the owners thereof, and that the rice was not subject to the lien asserted by plaintiff. The defendant came into court and filed an answer to the demand of the bank.

In answer thereto defendant alleged that he had entered into an agreement in writing with plaintiff bank for advances for his farm for the year 1923, and that he had on Jan. 11th, 1923, the date of the execution of this agreement, executed his note in favor of plaintiff for $2000.00; that in this contract it was specially stipulated that one-fifth of his crop would be reserved for water rent; two-fifths for the holder of land or mortgage notes he owed, and that the Bank was given a lien and pledge, under this contract, on the other two-fifths of the entire crop he would raise on his farm. He alleged further that in accordance with the stipulations of this agreement he had delivered to plaintiff two-fifths of his rice crop, one-fifth to the United Irrigations and Rice Milling Company for water rent, and the remaining two-fifths he had delivered at the Mutual Warehouse, Gueydan, Louisiana, for Houssiere and Latreille, intervenors, who were the holders of the mortgage or land notes bearing on his property.

This contract was executed Jan. 11th, 1923, before R. M. Montagne, Notary Public, under the provisions of the pawn and pledge act, No. 66, 1874, after stating that the bank was making these advances to defendant in cash and supplies in the sum of $2000.00 for the year 1923 on his farm

in Vermilion Parish, the contract says, quoting to wit:

"On his own land 2-5 of crop—1-5 for water and 2-5 for land notes. This lien covers all rice raised by Racca on any place." The words: "On his own land—2-5 of crop" can have no other meaning but that the privilege would affect in favor of the bank only 2-5 of defendant's crop. If any doubt could be said to exist over such a plain declaration, the words which immediately follow: "1-5 for water and 2-5 for land notes" have certainly the effect of removing all such possible obscurity, and making it clear that the bank consented to a restriction or limitation of its lien to 2-5 of the crop. The plaintiff does not dispute that the 1-5 of the crop was dedicated for water rent under the terms of the contract. It contends, however, that 2-5 of the crop for land notes was not excepted from the operation of its privilege. The defendant says that Mr. Montagne, manager of the bank, agreed to advance him the money on 2-5 of his crop, because, as he testified: "I had to give the other 2-5 to Messrs. Houssiere and Latreille." The proof shows that defendant made a distribution of his crop for water rent on his land notes, and to the bank in accordance to the proportions stated in the contract. There can be no question that he so understood the agreement, and so construed it in making these deliveries of his rice. Mr. Montagne, manager of the bank, says Racca, defendant, delivered 2-5 of his crop of 1923 to the bank. He also says the bank knew he was delivering 2-5 of his crop to Houssiere and Latreille. This evidence shows that defendant was making an open distribution of his crop and according to the stipulations of his contract with the bank, as he understood it. The record shows that on Jan. 13th, 1923, defendant executed a written pledge of his crop of that year to the intervenors. This lien was given by defendant merely to secure the mortgage or land notes he had executed in favor of Houssiere and Latreille, no money having been advanced on this contract, which was also drawn up in the form of a pawn and pledge. Mr. Houssiere testifies that it was understood when defendant granted them this security for the mortgage, that defendant was to grant them a lien on 2-5 of his crop free of any liens or encumbrances in favor of any one else. This contract executed in favor of intervenors did not have the effect of creating a lien on defendant's crop, as no money was advanced thereon, but it shows that defendant had intended thereby to grant a lien in favor of intervenors on a basis of 2-5 of his crop. This contract between Houssiere, Latreille and defendant was passed only two days prior to the execution of the contract with the Bank. There is, therefore, nothing surprising that defendant should have stated to Mr. Montagne when he agreed to give the Bank a pledge on his crop that it would be restricted to 2-5 thereof, as he had promised to give the other 2-5 to Messrs. Houssiere and Latreille. The contract with the bank was executed by Mr. Montagne as Notary. The words: "2-5 for land notes" were inserted therein to his knowledge. They could have no possible reference to the obligations defendant had incurred towards the bank, as it was not the holder of notes of that character against defendant. Evidently, these words referred to the land or mortgage notes defendant owed intervenors. Counsel for plaintiff says these figures, 1-5 —2-5 and 2-5 used in the contract of pledge had reference to an old indebtedness due by defendant to the bank, which was to receive credit in these proportions, after the year's advances had been paid. Mr. Montagne stated as a witness that the indebtedness of defendant to the bank which existed prior to Jan.

1923, had been secured by a chattel mortgage defendant had given on his live stock and implements of husbandry. This testimony negatives the idea that the figures hereinabove referred to could have had any reference to any old indebtedness that may have been due by defendant to the bank. If these figures had been used for the purpose stated by Mr. Montagne there can be no doubt they would have been made to directly apply to the old debts due by defendant, the contract having been executed by Mr. Montagne himself, in his notarial capacity. Instead of giving them the meaning now contended for, these figures, with the accompanying language, make it clear that the parties thereto referred specially to the land notes which were held by intervenors; and this construction of the contract is fully sustained by the testimony and circumstances of the case for the reasons hereinabove given.

Counsel for the bank calls for attention to the following words in the contract: "This lien covers all rice raised by Racca in any place." The contract declares that these advances were made for the farm of the defendant situated in the Parish of Vermilion. As such was the purpose for which the advances had been furnished, it is difficult to account for the words: "All rice raised by Racca in any place," which are found in the line quoted above. It does not appear in this case that any of the rice seized had been harvested anywhere else but on the farm of the defendant, and we fail to see that the foregoing statement in the contract is of any importance in the decision of this case.

Counsel for the bank calls for attention particularly to that clause of the contract where Racca obliged himself to deliver to the bank his "entire crop out of his share raised by him on the above described land." It is stated here, it will be noted, his entire crop "out of his share". This crop was to be grown on his place and was, no doubt, to be all his. As before stated, 1-5 had been dedicated to water rent, and 2-5 to the land notes under the terms of the contract. As such was the agreement, the entire crop out of his "share", which defendant bound himself to deliver to the bank, had reference to the other 2-5 of his rice crop. This construction is in conformity with the wording of the contract, and the testimony given in explanation of its terms.

Counsel for plaintiff argues that it would have been the height of folly for the bank to have advanced the sum of over $1700.00 on a lien bearing only on 2-5 of defendant's crop. The evidence justifies the conclusion that this security was not sufficient to protect the bank's entire loan on these advances. It is very probable that the bank made a bad investment, but the contract became the law between the parties, as there was nothing to impair or invalidate it in law or morals, and it must be enforced according to its terms and conditions. The proof shows that the 279 sacks constituted 2-5 of defendant's crop, and that this rice has been delivered by him to intervenors in part payment of their land or mortgage notes. Ownership of this rice passed to intervenors free of the bank's privilege, and they are entitled to recover its proceeds.

It is, therefore, ordered adjudged and decreed that the part of the judgment appealed from decreeing that the proceeds of the rice seized be applied to plaintiff's claim, and perpetuating the sequestration, be avoided, annulled and reversed; and that the cost of the intervention be paid by plaintiff bank. It is further ordered and decreed that the proceeds of sale of said rice be paid to intervenors; and as thus reversed and amended that the judgments in other respects be affirmed.